**UNAUTHORIZED PRACTICE OF LAW COMMITTEE**

v.

**STATE of Rhode Island, DEPARTMENT OF WORKERS' COMPENSATION et al.**

**86–328–Appeal.**

Supreme Court of Rhode Island.

June 2, 1988.

Daniel R. Sumner, Warwick, for plaintiff.

Joseph A. Kelly, Carroll, Kelly & Murphy, Providence, for defendants.

William P. Robinson, III, Edwards & Angell, Providence, for amicus curiae Business and Industry Council of Rhode Island.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal by the defendants from a judgment entered in the Superior Court declaring portions of two statutes enacted by the General Assembly, G.L. 1956 (1984 Reenactment) § 42–94–5, as amended by P.L. 1986, ch. 1, and G.L. 1956 (1986 Reenactment) § 28–33–1.1(i)(1)(C), unconstitutional as violative of this court's exclusive power to regulate the practice of law. We reverse. The facts of the case insofar as pertinent to this appeal are as follows.

At its 1985 session the General Assembly enacted a set of comprehensive statutory provisions that created a Department of Workers' Compensation, §§ 42–94–1 to 42–94–18 (inclusive). The first section of this chapter sets forth the following legislative findings:

> "The general assembly finds: that the present workers' compensation system in the state suffers from structural problems, with powers, duties and functions divided among various departments and divisions; that such problems lead to higher costs of workers' compensation and delays in compensating injured workers; that there is a need for informal hearings as well as formal hearings; that assistance and information should be readily available to the parties and therefore the general assembly finds it would be in the best interest of the peo-

ple of the state to consolidate the powers, duties and functions relating to workers' compensation into one department.

"The general assembly finds that the workers' compensation commission, established by chapter 3297 of the public laws of 1954, wherein workers' compensation cases pending before the superior court were transferred to the workers' compensation commission for determination, shall continue to remain as a distinct separate judicially independent entity, administered completely separate and apart from the department of workers' compensation created by this chapter." Section 42–94–1.

The General Assembly, in attempting to implement the scheme of establishing informal hearings within the department as an initial procedure to supplement the formal hearings before the Workers' Compensation Commission, created an office of employee assistants. The function and purpose of these employee assistants are set forth in § 42–94–5 as follows:

"The director of the department of workers' compensation shall provide adequate funding for an office of employee assistants and shall, subject to the personnel law, appoint the assistants to the staff of the department. Assistants should, at a minimum, demonstrate a level of expertise roughly equivalent to that of insurance claims' analysts or adjusters. The purpose of employee assistants shall be to provide advice and assistance to employees under the workers' compensation act and particularly to assist employees in preparing for and assisting at informal conferences under § 28–33–1.1.

"No employee of the office of employee assistants or hearing office of the department may represent any employee, employer, insurer, self-insurer, group self-insurer, adjusting company or self-insurance company at a conference or hearing within the department or before the workers' compensation commission for a period of two (2) years after terminating employment with the office or department.

"The director shall appoint such number of employee assistants as he deems necessary to carry out the provisions of the workers' compensation act."

The Legislature enacted § 28–33–1.1 in order to streamline the disposition of initial applications for compensation on the part of injured workers. Pursuant to § 28–33–1.1(g), in the event that an employer controverts the employee's claim for compensation, the employer must file a notice of controversy within fourteen days of the injury that gives rise to the claim. The notice of controversy relating to compensation for specific injuries or for medical expenses must be filed within ninety days or thirty days, respectively. When such notices have been filed in accordance with subsection (g), an informal hearing is required to be scheduled no later then two weeks following the date of filing of notice pursuant to § 28–33–1.1(i)(1).

This hearing will be conducted by a hearing officer employed by the department, whose duty it shall be to resolve controversies or misunderstandings and to render a preliminary determination. Moreover, at the hearing the hearing officer is not bound by formal rules of evidence. If the preliminary determination results in an order to pay compensation, payments shall commerce within fourteen days of said determination. Either party may file an appeal to the Workers' Compensation Commission, which will then consider the matter de novo. Similar informal hearings are provided by § 28–33–1.1(i)(2) in cases wherein an employer files a notice of intent to discontinue, reduce, or suspend payments.

In respect to initial informal hearings, when an employee claims compensation and the employer files a notice of controversy, the department director is required by § 28–33–1.1(i)(1)(C) to assign an employee assistant to each case scheduled for informal hearing. The employee assistant is required by the subsection to be present at the informal hearing and to be available to assist the employee in preparation for and during the informal hearings. Either party may be represented or assisted by any person of his own choosing at his own

expense. If the employer chooses to be represented by an attorney, the employee may also be represented by an attorney at the employer's expense, whether or not the employee prevails. If both parties are represented by an attorney, the director shall determine the reasonable amount of the employee's attorney's fee, which will be paid by the employer. If the employer is not represented by an attorney, the employee may still elect to be represented by an attorney, but in such event, even if the employee prevails, the director shall determine a reasonable attorney's fee to be paid by the employee.

In the course of proceedings in the Superior Court, evidence was adduced corcerning regulations of the Department of Workers' Compensation and also a position description filed in the department of personnel which defined the duties of employee assistants as follows:

"To provide technical advice and assistance to various parties involving their rights and obligations under the Workers' Compensation Act.

"To assist the injured employee in preparation for and at informal Workers' Compensation hearings, and to help in providing the necessary documentation at said hearings.

"To provide both routine and technical advice and/or information to the general public regarding rights and responsibilities under the Workers' Compensation Act.

"To attempt to settle disputes between injured workers, insurance companies, employers, purveyors of services, and any other interested parties prior to an informal hearing.

"To conduct in person interviews; both in office and field.

"To gather and prepare information necessary for use at informal hearings.

"To do related work as required."

At the conclusion of the presentation of evidence and argument in the Superior Court, the trial justice held that the duties of the employee assistants constituted the practice of law under definitions recognized by this court in such prior cases as *In re*

*Rhode Island Bar Association,* 106 R.I. 752, 263 A.2d 692 (1970), and *Rhode Island Bar Association v. Automobile Service Association,* 55 R.I. 122, 179 A. 139 (1935). There is no question that this court in an exhaustive opinion in *Rhode Island Bar Association v. Automobile Service Association,* cited with approval a definition of the practice of law formulated by the Supreme Court of South Carolina in *In re Duncan,* 83 S.C. 186, 189, 65 S.E. 210, 211 (1909), which was doubtless broad enough to comprehend the activities of the employee assistants at issue in the case at bar. Without quoting the language set forth in that case, we assert that this definition would include all the activities that have been prohibited by G.L. 1956 (1981 Reenactment) § 11–27–2, which purports to define the practice of law as well as activities enunciated in § 11–27–11, as amended by P.L. 1987, ch. 416, § 1, which presumes to permit certain practices to be performed by persons who are not members of the bar. It should be noted that § 11–27–11(10) also would have the effect of exempting employee assistants who act in accordance with their statutory authority from violating the prohibition of § 11–27–2.

It has long been the law of this state that the definition of the practice of law and the determination concerning who may practice law is exclusively within the province of this court and, further, that the Legislature may act in aid of this power but may not grant the right to anyone to practice law save in accordance with standards enunciated by this court. *Berberian v. New England Telephone and Telegraph Co.,* 114 R.I. 197, 330 A.2d 813 (1975); *In re Rhode Island Bar Association,* 106 R.I. 752, 263 A.2d 692 (1970); *Rhode Island Bar Association v. Automobile Service Association,* 55 R.I. 122, 179 A. 139 (1935).

However, it should be noted that since 1935 the General Assembly has without interference by this court permitted a great many services that would have come within the definition of the practice of law to be performed by insurance adjusters, town clerks, bank employees, certified public accountants, interstate commerce practition-

ers, public accountants (other than certified public accountants), as well as employee assistants. The plain fact of the matter is that each of these exceptions enacted by the Legislature constituted a response to a public need. In each instance the Legislature determined that the persons authorized to carry out the permitted activities were qualified to do so. There seems no question that in certain types of tax matters certified public accountants and public accountants are highly qualified to advise on tax laws and to prepare tax returns. Indeed, many attorneys-at-law who are not tax specialists resort themselves to such individuals for tax advice.

We must remember that the practice of law at a given time cannot be easily defined. Nor should it be subject to such rigid and traditional definition as to ignore the public interest. Two recent cases are illustrative of the response in Colorado and Ohio to questions concerning unauthorized practice of law and are not dissimilar to the problem raised in the case at bar. In *Unauthorized Practice of Law Committee v. Employers Unity, Inc.*, 716 P.2d 460 (Colo. 1986), the Supreme Court of Colorado was confronted with the issue of whether a group of individuals who were not members of the bar might be permitted to give advice to employers and employees concerning claims for unemployment compensation. These individuals not only prepare and file written documents, pleadings, and other legal forms, but also appear at hearings before referees of the Division of Employment and Training of the Colorado Department of Labor. The Colorado Supreme Court en banc accepted conclusions of law formulated by a special master who determined that the activities of these individuals fell within the definition of the practice of law. Nevertheless, the court also adopted the recommendations of the special master that the court should grant permission for lay persons to continue to represent others at hearings before such referees, "even though such representation constitutes practicing law." 716 P.2d at 464. In a special concurring opinion Justice Erickson suggested that it was appropriate to grant permission in limited circumstances for lay persons to engage in activities that might be included within the definition of the practice of law "where there are few disputed legal principles and where the monetary amount in issue is too small to justify hiring an attorney." *Id.* at 465.

In *Henize v. Giles*, 22 Ohio St.3d 213, 490 N.E.2d 585 (1986), a similar question was presented to the Supreme Court of Ohio concerning the propriety of nonlawyer representatives appearing at administrative unemployment-compensation hearings before the Ohio Bureau of Employment Services and the Unemployment Compensation Board of Review. The Supreme Court of Ohio, although reserving to itself, as did the Supreme Court of Colorado, the authority ultimately to control the practice of law, held that this practice should be permitted and expressed the following rationale for the determination:

"Although parties may choose to be represented by lawyers in these proceedings, the hard reality is that few employ legal counsel. This is due in part to the interest at stake, the regulations which understandably limit attorney fees and, most importantly, the fact that attorneys are simply not required in most of these claim reviews. This is because of the informality of the proceedings coupled with the recognition that, in most instances, a formal presentation of legal argument is not needed. Instead, the hearing is designed to be an administrative information gathering tool serving as an alternative to judicial resolution of every contested claim.

"Unquestionably, this court is the body which ultimately controls the practice of law in this state. Section 2(B)(1)(g), Article IV of the Ohio Constitution; R.C. 4705.01 * * * . With this authority is the concomitant responsibility to protect the public by preventing the unauthorized practice of law, while at the same time not exercising this authority so rigidly that the public good suffers." 22 Ohio St. 3d at 217, 490 N.E.2d at 588–89.

The Ohio court considered that though such activities could arguably be viewed as

the practice of law, the public interest dictated that lay representation should be permitted to assist parties in this context of informal hearings.

We recognize that in this case we are dealing, not with unemployment compensation hearings, but with employee claims for workers' compensation. However, the legislative design for prompt, informal hearings in respect to disputed claims bears a strong resemblance to the unemployment-compensation hearings described in Colorado and Ohio. Generally, the monetary amount at stake in these proceedings will consist of small weekly sums and medical expenses. In the event that the employer chooses to be represented by an attorney, the employee will have the same privilege and, if he or she prevails, the employer will pay the counsel fee.

In instances in which the employer does not choose to be represented by counsel, the employee would be confronted with the not-inconsiderable problem of obtaining an attorney's services at his own expense. In many instances doing so would not be practicable or feasible for the employee. The employee assistants provided by the statute would fill that gap in representation for the limited purpose of the informal hearing.

In the event that either party appeals and the matter is presented to the Workers' Compensation Commission, then the employee and the employer will be represented by licensed attorneys.

We are of the opinion that the informal hearings, together with lay representation, may well serve the public interest. We concluded from the evidence introduced that the employee assistants will be adequately trained to carry out the relatively simple and repetitive functions which they will be called upon to perform. We do require, however, that in the event an employee is denied compensation at such a hearing the employee be given an opportunity to consult with an attorney of his choice in order to determine whether he or she will appeal to the Workers' Compensation Commission. This consultation should be paid for at state expense at a reasonable

fee to be determined by the director. In the event that an attorney chooses to represent the employee before the commission, such attorney would be paid by the employer if the employee prevails as presently provided by law. *See* G.L. 1956 (1986 Reenactment) § 28–35–32.

In authorizing the employee assistants to carry out the functions authorized by § 42–94–5, we are dealing with a question of first impression and are relying to a great extent upon the legislative findings that declare the necessity for an informal prompt hearing in the event of controversy. Therefore, this grant of authorization is made upon a somewhat experimental basis. Consequently we shall leave the matter open for the Unauthorized Practice of Law Committee to come again before the court in the event that the public, and particularly employees, are not adequately protected by the services of the employee assistants. Meanwhile the act may be implemented in the form in which it is presently cast, with the single modification set forth in this opinion.

For the reasons stated, the defendants' appeal is sustained. The judgment of the Superior Court is reversed. The papers in the case may be remanded to the Superior Court with directions to enter judgment for the defendants but without prejudice to the plaintiff to bring a new complaint in the event that the public interest shall so warrant in the future, as indicated heretofore in this opinion.

MURRAY, Justice, dissenting.

I respectfully disagree with the majority. I would affirm the trial justice's decision on the basis that the language in G.L. 1956 (1984 Reenactment) § 42–94–5, as amended by P.L. 1986, ch. 1, § 3, allows a group of nonlicensed employees to perform duties which are equivalent to those reserved for qualified, licensed attorneys. Employee assistants who engage in the unauthorized practice of law serve to the detriment of the public, and this court, by permitting such conduct, compromises established professional standards requisite for the proper administration of justice.

In *Rhode Island Bar Association v. Automobile Service Association*, 55 R.I. 122, 179 A. 139 (1935), Justice Condon adopted the following language in addressing the activities of a lawyer: "The work of the office lawyer is the groundwork for future possible contests in courts. It has profound effect on the whole scheme of the administration of justice. It is performed with that possibility in mind, and otherwise would hardly be needed. * * * It is of importance to the welfare of the public that these manifold customary functions be performed by persons possessed of adequate learning and skill, of sound moral character, and acting at all times under the heavy trust obligation to clients which rests upon all attorneys." 55 R.I. at 134–35, 179 A. at 144.

When a worker sustains an injury during the course of employment, he or she may initiate a claim for compensation benefits subject to the provisions of the Workers' Compensation Act. A claimant's rights and obligations are predicated on state statute and are set forth in G.L. 1956 (1986 Reenactment) §§ 28–35–29 to 38 (inclusive). Under the present statutory scheme it is required that the department director assign an employee assistant to each case scheduled for an informal hearing. An informal hearing is scheduled when an employee claims compensation and an employer files a notice of controversy. Clearly upon the filing of the notice of controversy and after an informal hearing has been scheduled, an adversarial proceeding has been established. It is imperative that the rights of the parties be protected.

A claimant must proceed in a forum unfamiliar to a layperson, and invariably the claimant will need assistance regarding the rights and obligations attendant to the compensation claim. However, at this stage in the proceeding the statute provides that an employee assistant be available to assist the claimant to prepare the claim and also to represent him or her at the informal hearing. There is no persuasive evidence to demonstrate that employee assistants who are not licensed attorneys can provide legal advice and representation equivalent to that which can be provided by a qualified attorney.

I believe that a licensed attorney, not an employee assistant, should be available "to provide information and assistance for the participants in the workers' compensation system with particular emphasis on assisting injured workers in receiving benefits in a timely and proper manner," as mandated in § 42–94–4(f), as amended by P.L. 1985, ch. 365, § 1. An attorney is better qualified to represent a claimant from the time of the initial filing for an informal hearing. The public interest would be better served, and the injured worker would receive competent representation from the commencement of the proceeding to its conclusion.

History demonstrates that the workers' compensation statute is subject to reenactment and revisions by the Legislature. Statutes are further refined by case law. Allowing employee assistants to provide technical advice and assistance to parties involving their rights and obligations under the act requires the majority to proceed on the premise that the employee assistants are skilled in interpretation of statutes and revisions thereto. It suggests that such employee assistants have an understanding of propositions of law set forth in relevant Supreme Court decisions. On this premise the majority permits the employee assistants to advise members of the public concerning their legal rights in accordance with the employee's comprehension of the present status of the law. To permit this activity may unwittingly work to the detriment of the public welfare.

Since these employee assistants are now to be vested with the responsibility for interpreting statutes and case law, and monitoring changes by the Legislature in regard to injured workers' rights; who will counsel these nonlawyer advocates? I suppose the workers' compensation department will retain a qualified member or members of the bar to reduce the language to layperson's terms so that the employee assistants will be apprised of changes in the law concerning the rights of the parties. It would be sensible to eliminate an additional layer of personnel and retain at-

torneys to serve as assistants to the workers' compensation department. Qualified attorneys are capable of interpreting statutes and monitoring significant developments in present case law. Thus, the risk of insufficient or incorrect legal advice being conveyed to the public is thereby minimized.

We have held that great and irreparable harm can come to the people by allowing unskilled persons into the practice of law. " 'Anything that tends to lower the standards of professional acquirements among those whose duty it is to investigate and defend the rights of others, is to be lamented.' " *Rhode Island Bar Association*, 55 R.I. at 131, 179 A. at 143. Moreover, when an injured worker " 'applies to an attorney for advice he should have security, from the attorney's previous study of his profession, that he is reasonably competent to discharge his trust.' " 55 R.I. at 132, 179 A. at 143. In my view, the injured worker, upon invoking the legal rights available under the act, is not wholly secure in procuring advice concerning available legal rights from employee assistants.

It is clear that employee assistants, acting pursuant to statutory language, and as learned from evidence at the proceedings below, perform activities that are within this court's definition of the practice of law. The majority accepts this conclusion, however opines that duties performed by employee assistants should be permitted and reasons that the interests of the public are better served. It points out that the Legislature authorizes qualified persons to do activities such as accounting, rendering advice on tax matters, and providing insurance and banking services. Concededly, the Legislature, by permitting these activities, effectively promotes the interests of the public by allowing selected professionals who are trained and licensed, or certified, to provide services that inevitably overlap with those considered to be the practice of law.

I am not convinced that employee assistants can be included among the professionals exempted by the Legislature. Compensation legislation is of comparatively recent origin and has developed rapidly owing to modern industrial development. Compensation statutes constantly change in response to present economic conditions, and statutes vary in different jurisdictions. Therefore, qualified attorneys possess the requisite skills necessary to determine a claimant's statutory rights. Employee assistants can distribute necessary documents to potential claimants and thereafter review the contents to ensure that all relevant information necessary for a determination of legal rights has been properly submitted. Beyond that activity it becomes necessary to analyze the information and formulate a strategy in accordance with available legal rights and obligations. A careful determination of legal consequences requires a skill possessed by a licensed attorney who has experienced the rigors of a legal education and upon examination has been admitted to the bar.

We have held that the " 'disposition of such issues for others, by advice and negotiation, for hire, is as much the practice of law as though process and pleadings, with or without trial, were necessary. Counsel as to legal status and rights, and conduct in respect thereto, are as much a special function of the English solicitor and the American lawyer as diagnosis, prognosis, and prescription are in the field of medicine.' " 55 R.I. at 136, 179 A. at 145. The majority is of the opinion that employee assistants are able to analyze a claimant's case, make an adequate determination of legal rights, and thereupon make a representation at an informal hearing. I cannot agree. We have cautioned against misleading "the public into the belief that they are entrusting their causes to those learned in the law and competent to serve them * * *." *Id.* at 139, 179 A. at 146. We concluded that this practice "would inevitably result in a deprivation of justice to many in the State." *Id.* at 139–40, 179 A. at 146.

Furthermore, the majority focuses on the role of employee assistants to fill in the gap in instances wherein the employer chooses not to be represented by counsel and the employee is confronted with the problem of obtaining an attorney's services

at his own expense. I see no advantage in providing less-than-competent legal representation in this instance. Apparently there is no cost effectiveness because oral argument disclosed that the present salaries for employee assistants are not dissimilar to those offered to recent admittees to the bar. The majority attempts to preserve an employee's right to legal representation by requiring that in the event he or she is denied compensation he or she will be given the opportunity to consult with an attorney of his or her choice in order to determine whether he or she will appeal to the Workers' Compensation Commission. The financial responsibility for this consultation is assumed by the state.

I think it is unnecessary to delay in providing qualified legal assistance to claimants. Undoubtedly, if a claimant is denied compensation in the first instance and is then asked if he or she would desire to consult an attorney for the purpose of an appeal, the response will be in the affirmative. The benefit of adequate legal representation from the initiation of a compensation claim will afford an injured worker security throughout the course of the proceeding. Consequently a more efficient system will develop by eliminating the cost in effort and time required continually to train laypersons in purely legal related matters.

In *Unauthorized Practice of Law Committee v. Employers Unity, Inc.*, 716 P.2d 460 (Colo.1986), the court allowed individuals to appear at hearings and represent others, conceding that their actions constituted the practice of law. However, in the accepted findings of fact the special master stated that with regard to unemployment-compensation claims, " 'the amounts involved do not warrant the employment of an attorney. * * * Because many claimants are reemployed before their 26-week eligibility period expires, it is impossible to predict with any certainty what the aggregate amount of benefits received by a claimant will be.' " *Id.* at 463.

I do not agree with the majority in characterizing a workers' compensation claim as a trivial matter similar to claims for unemployment compensation. Workers' compensation claims can be serious to the extent that an individual can be permanently impaired and as a result will never again be gainfully employed. It is an overgeneralization to state that the monetary amount at stake consists of small weekly sums and medical expenses. Employees subject to the provisions of G.L.1956 (1986 Reenactment) § 28–29–17, waive their common-law rights to recover damages for personal injuries, and therefore, the compensation scheduled under the act is the sole measure of damage for the employee or the employee's dependents. For a seriously or permanently disabled worker, the stake is not too insignificant to justify that a claimant should be provided with less-than-adequate legal representation by a qualified, licensed attorney.

The issues presented in the case before us are not dissimilar to the issues in *Unauthorized Practice Committee, State Bar of Texas v. Cortez*, 692 S.W.2d 47 (Tex.) *cert. denied*, 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985). The Texas Supreme Court affirmed a trial court judgment holding that as a matter of law the acts and practices of the Cortezes constituted the practice of law. The Cortezes provided immigration services for customers interested in obtaining residency in the United States. Mrs. Cortez testified that she assisted customers in filling out forms required and told them where to file the forms. The court determined that recording responses to questions on the various forms did not require special legal skills. However, beyond this activity the court reasoned, first, that careful determination of legal consequences was required. Second, the court held that advising clients regarding whether they qualified or informing them that no further assistance was available could mislead a customer to believe that no other rights existed. The court held that interviewing clients, preparing immigration forms, and providing advice required legal skills and knowledge. The court stated that inadvertently misleading people is the "type of occurrence which is sought to be prevented by prohib-

iting the unauthorized practice of law." *Id.* at 50.

The employee assistants to the Department of Workers' Compensation assist claimants in filling out forms and provide advice based on their interpretation of the statute in light of the information supplied by the injured worker. This activity is not in the interests of the public, and I believe that the seven employee assistants to the department should be licensed attorneys in order to reduce the possibility of inadequate legal representation concerning rights provided in the Workers' Compensation Act.

The compelling reasons for a state supreme court to assume responsibility and monitor intrusions by unlicensed individuals into the practice of law have been addressed. In *State of Florida ex rel. The Florida Bar v. Sperry,* 140 So.2d 587 (Fla. 1962), *vacated on other grounds,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), the court said:

"The reason for prohibiting the practice of law by those who have not been examined and found qualified to practice is frequently misunderstood. It is not done to aid or protect the members of the legal profession either in creating or maintaining a monopoly or closed shop. It is done to protect the public from being advised and represented in legal matters by unqualified persons over whom the judicial department can exercise little, if any control in the matter of infractions of the code of conduct which, in the public interest, lawyers are bound to observe." 140 So.2d at 595.

Also, in *The Florida Bar v. Moses,* 380 So.2d 412, 417 (Fla. 1980), the court said: "The single most important concern in the Court's defining and regulating the practice of law is the protection of the public from incompetent, unethical, or irresponsible representation." Accordingly, I would affirm the decision of the trial justice. It is my considered opinion that § 42–94–5 and G.L. 1956 (1986 Reenactment) § 28–33–1.1(9) are unconstitutional as violative of this court's exclusive power to regulate the practice of law. Therefore, I respectfully dissent from the majority opinion.