**In re TOWN OF LITTLE COMPTON.**

**No. 2011–101–M.P.**

Supreme Court of Rhode Island.

Feb. 9, 2012.

Richard S. Humphrey, Esq., Tiverton, for Town of Little Compton.

Marc B. Gursky, Esq., Providence, for Little Compton Firefighters Local 3957.

Present: GOLDBERG, FLAHERTY, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

Nearly eighty years ago, this Court stated that "the practice of the law is a special field reserved to lawyers duly licensed by the court * * *." *Rhode Island Bar Association v. Automobile Service Association,* 55 R.I. 122, 126, 179 A. 139, 140 (1935). The thrust of this ruling was to ensure "that the public welfare will be served and promoted." *Id.* at 131, 179 A. at 143. Indeed, "[g]reat and irreparable injury can come to the people, and the proper administration of justice can be prevented, by the unwarranted intrusion of unauthorized and unskilled persons into the practice of law." *Id.* At the same time, however, this Court also acknowledged that the practice

of law can be "difficult to define." *Id.* at 126, 179 A. at 140. This difficulty "especially is true today, based on the changing nature of the legal profession and the lightning speed with which these changes have occurred." *In re Law Offices of James Sokolove, LLC,* 986 A.2d 997, 1005 (R.I.2010). The matter now before the Court requires us to once again feel for the contours of this elusive definition.

On July 8, 2010, the Unauthorized Practice of Law Committee (committee) conducted an investigational hearing in connection with a complaint filed with it by the Town of Little Compton (the town) against the Little Compton Firefighters Local 3957 (the union).[1] In its complaint, the town contended that the union, or its representative, had engaged in the unauthorized practice of law, in violation of G.L.1956 § 11–27–2,[2] when the union allowed its nonlawyer business agent to represent it at a labor arbitration hearing. The committee's report to this Court[3] ultimately concluded that the union representative's actions on behalf of the union constituted a "technical violation" of the statute governing the unauthorized practice of law. Mindful that this type of lay representation of unions in labor arbitrations is a common practice in Rhode Island, the committee petitioned this Court

for guidance on how to proceed. After reviewing the committee record,[4] the parties' written submissions and oral arguments, and the many amicus briefs filed with the Court, we decline to limit this particular practice at this point in time for the reasons that follow.

## I

### Facts and Travel

On June 19, 2008, the union and the town entered into a collective-bargaining agreement (CBA) that governed the terms and conditions of firefighter employment in Little Compton. In the CBA, the parties agreed to submit all grievances to arbitration rather than resort to the courts.

On February 11, 2009, the union filed two grievances against the town, alleging that the town had violated the CBA by failing to maintain certain minimum staffing levels and by not filling a vacant position. After the town denied both grievances, the union elected to proceed to arbitration pursuant to the terms of the CBA. In preparation for arbitration, the union appointed Joseph Andriole (Mr. Andriole), a staff representative from the Rhode Island State Association

---

1. General Laws 1956 § 1 1–27–19(d) endows the committee with the following duties and powers:

    "(2) To investigate all reports of activities which may constitute unauthorized practice of law and to hold hearings to determine whether the charges are substantiated or unsubstantiated;
    " * * *
    "(5) To issue subpoenas and administer oaths in connection with any investigations, hearings, or other proceedings held under the authority of this chapter;
    "(6) To take or cause depositions to be taken as needed in any investigation, hearing, or proceeding;

    "(7) To summon and examine witnesses during any investigation, hearing, or proceeding conducted by the committee[.]"

2. *See* § 1 1–27–2 in note 15. infra.

3. After holding an investigatory hearing, § 1 1–27–19(g) requires the committee to then "make a written report of its findings of fact and its recommendation, and the report shall be immediately transmitted to the [C]hief [J]ustice of the [S]upreme [C]ourt with a transcript of the evidence."

4. We acknowledge and thank the members of the committee for the diligent and conscientious manner in which they approached this matter.

of Firefighters, to represent the union in the arbitration. As a nonlawyer, Mr. Andriole is not licensed to practice law in Rhode Island.

On August 26, 2009, the town filed a complaint in the Superior Court for Newport County, seeking declaratory relief concerning the rights of the parties. The town also moved to enjoin the union from using a nonlawyer in the arbitration proceeding, alleging that such action would constitute the unlawful practice of law in violation of chapter 27 of title 11. The union filed an answer and objected to the motion. A Superior Court justice denied the motion on November 2, 2009.[5,6]

The arbitration hearing took place on November 4, 2009, and November 23, 2009, with Mr. Andriole representing the union. The arbitration panel eventually denied the union's grievances.

After the arbitration panel decided in the town's favor, the town filed a petition to confirm the arbitration award and requested the entry of final judgment in Superior Court. The union sought and received permission to consolidate the town's original action requesting injunctive and declaratory relief with the petition to confirm the arbitration award. On July 14, 2010, a Superior Court justice considered both matters, ultimately granting the petition to confirm the arbitration award

and dismissing the declaratory judgment action as moot.[7]

On December 18, 2009, prior to the arbitration panel's issuance of its decision, the town filed a formal complaint[8] with the committee, asserting "that [the union], specifically [Mr.] Andriole, was engaging in the unauthorized practice of law" during the November 2009 arbitration hearing, and requesting that the committee investigate its claim. The committee, after finding probable cause to believe that the union had "engaged in the unauthorized practice of law by having a non[ ]lawyer represent it in an arbitration proceeding[,]" notified the union of the complaint and scheduled an investigational hearing for July 8, 2010. The union was represented by an attorney authorized to practice law in Rhode Island at the hearing, during which testimony was taken and exhibits were introduced.

At the conclusion of the committee's investigational hearing, a majority of the committee voted in favor of finding that "Mr. Andriole's actions on behalf of the [u]nion constituted a technical violation of * * * § 11–27–2." Mindful of the fact that nonlawyer representation of unions at labor arbitrations is a common practice in Rhode Island, the committee deferred to this Court as to how to proceed.[9] After due consideration, this Court scheduled the matter for oral argument and ordered the parties to submit briefs outlining (1)

---

5. In his denial, the trial justice considered the motion as "akin to a request for a preliminary injunction" and decided the motion "through that lens."

6. The town petitioned this Court for a writ of certiorari and moved for a stay of the arbitration proceeding; both the petition and the motion were denied by this Court on November 3, 2009.

7. The union was represented by a licensed attorney in the Superior Court proceeding.

8. On September 1, 2009, the town sought from the committee a legal opinion on whether nonlawyer representation in labor arbitration hearings constituted the unauthorized practice of law. The committee declined to take action at that time because no formal complaint had been submitted.

9. Neither the town nor the committee requested that criminal prosecution or disciplinary action be initiated against Mr. Andriole for his actions.

whether Mr. Andriole's actions constituted the unauthorized practice of law in violation of § 11-27-2, and if so, (2) whether in light of such violation, this Court should authorize the committee to take further action, and (3) the implications, if any, of nonlawyer representation in labor arbitrations. The order also invited interested parties to file briefs addressing these issues.[10]

## II

### Standard of Review

"It has long been the law of this state that the definition of the practice of law and the determination concerning who may practice law is exclusively within the province of this court * * *." *Unauthorized Practice of Law Committee v. State Department of Workers' Compensation*, 543 A.2d 662, 664 (R.I.1988) (citing *Berberian v. New England Telephone and Telegraph Co.*, 114 R.I. 197, 330 A.2d 813 (1975)); *see also In re Ferrey*, 774 A.2d 62, 64 (R.I.2001) ("this Court has exclusive and ultimate authority to determine who may, and may not be permitted to practice law in this state"). We recognize that the General Assembly has, from time to time, enacted statutes that to some extent codified and regulated the practice of law with little interference by this Court. *Department of Workers' Compensation*, 543 A.2d at 664-65. Although this legislative effort may be beneficial in protecting our citizenry from unqualified persons promoting themselves as skilled practitioners of the law, we pause to reiterate that the Supreme Court reserves to itself the ultimate and exclusive authority to determine what does and does not constitute the practice of law within the state and to regulate

those people qualified to engage in the practice. With that fundamental responsibility in mind, we proceed into the issues presented by the matter presently before us.

## III

### Analysis

The committee's petition, at its core, asks this Court to address the limited issue of whether a nonlawyer public labor union employee representing a union in a grievance arbitration is engaged in the unauthorized practice of law when a collective-bargaining agreement is the governing document dictating arbitration as the mechanism for conflict resolution. In determining this issue, it is beneficial to examine the evolution and current state of public sector labor arbitration and nonlawyer representation therein, both nationally and in Rhode Island.

### A

### Brief History of Labor Arbitration

"Arbitration is a contractual process in which the parties agree to remove themselves from judicial determination and instead present their cases to an impartial finder of fact and law of their own choosing." *Buttie v. Norfolk & Dedham Mutual Fire Insurance Co.*, 995 A.2d 546, 554 (R.I.2010) (citing *North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers*, 945 A.2d 339, 347 (R.I.2008)). Arbitration is viewed as a highly effective dispute-resolution process because it offers "a relatively informal and expedient alternative to litigation." *North*

---

10. We thank the Rhode Island Bar Association, the Rhode Island Attorney General, the American Arbitration Association, the International Association of Fire Fighters, the American Civil Liberties Union, Professors of Legal Ethics, and the National Education Association Rhode Island for their well-reasoned *amicus curiae* briefs.

*Providence School Committee*, 945 A.2d at 347.

Although it is the norm today for disputes involving collective-bargaining agreements to be resolved through arbitration procedures, this has not always been the case. From the late nineteenth century until the 1930s, courts generally viewed arbitration unfavorably, believing that "an agreement to arbitrate operated to divest courts of legislatively-granted jurisdiction and, therefore, was illegal and void." Joseph A. Arnold, *The Circumvention of Compulsory Arbitration: Two Bites at the Apple, or a Restoration of Employees' Statutory Rights?*, 33 Seton Hall L.Rev. 1207, 1211 (2003) (quoting Richard A. Bales, *Compulsory Arbitration: The Grand Experiment In Employment* 16 (1997)). Because of "the difficulties of enforcing collective agreements [in court], some unions turned to grievance arbitration—* * * as a means of enforcing" such agreements. Katherine Van Wezel Stone, *Rustic Justice: Community and Coercion Under the Federal Arbitration Act*, 77 N.C. L.Rev. 931, 1009–10 (1999). First introduced in the garment industry, grievance arbitration spread slowly until World War II, when "the attitude of courts and unions toward grievance arbitration began to change." *Id.* at 1010; *see also* Roberto L. Corrada, *The Arbitral Imperative in Labor and Employment Law*, 47 Cath. U.L.Rev. 919, 927 (1998) (noting that arbitration became more accepted due to a need to avoid disrupting wartime production).

In 1942, the federal government established the War Labor Board with the "intent [of] maintaining labor peace to ensure stable wartime production * * *." Van Wezel Stone, 77 N.C. L.Rev. at 1010;

James A. Gross, *Incorporating Human Rights Principles Into U.S. Labor Arbitration: A Proposal For Fundamental Change*, 8 Emp. Rts. & Emp. Pol'y J. 1, 4 (2004). Because the arbitration of labor disputes served to avoid costly, hostile, and unpredictable work stoppages, the War Labor Board established arbitration as "the preferred method for resolving workplace disputes" by "encourag[ing] parties to include arbitration clauses in their collective bargaining agreements and [to] accord[ ] arbitration awards substantial deference." Van Wezel Stone, 77 N.C. L.Rev. at 1010 (citing James B. Atleson, *Labor and the Wartime State: Labor Relations and Law During World War II*, 60–65 (1998)). In 1947, Congress enacted section 301 of the Labor Management Relations Act, which gave federal courts jurisdiction to hear and decide labor disputes. Van Wezel Stone, 77 N.C. L.Rev. at 1010. While this initial phase of labor arbitration advancement was spearheaded by Congress, emphasis and clarification was brought about by the United States Supreme Court.

In 1957, the Supreme Court in *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), "interpreted section 301 [of the Labor Management Relations Act] as a directive to the federal courts to develop a federal common law of collective bargaining, * * * [with] support for and deference to private arbitration." Van Wezel Stone, 77 N.C. L.Rev. at 1011 (citing *Textile Workers Union*, 353 U.S. at 451, 77 S.Ct. 912). Then, in 1960, the Supreme Court decided three labor arbitration cases, collectively known as the "*Steelworkers' Trilogy*."[11] Van Wezel

11. These cases were *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424

(1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *Unit-*

Stone, 77 N.C. L.Rev. at 1011. In these cases, the Court enforced arbitration provisions included in "union-management negotiated [collective-bargaining agreements] and approved the arbitration process for the resolution of disputes arising under those [agreements]." Arnold, 33 Seton Hall L.Rev. at 1214. Together, these cases paved the way for private arbitration to be the central and distinctive feature of our collective-bargaining system, which continues to this day.[12]

## B

### Nonlawyer Representation in Labor Arbitration: A National Perspective

Like Rhode Island, most other states have not considered whether nonlawyer representation in labor arbitration is the unauthorized practice of law. However, those states that have addressed this issue have generally permitted the practice.

For example, the Board on the Unauthorized Practice of Law of the Supreme Court of Ohio recently determined in an advisory opinion that "[a] nonlawyer labor consultant, employed by a union, may represent a local bargaining unit in an arbitration process dictated by a collective bar-

gaining agreement, as long as he/she do[es] not engage in those activities that equate to the practice of law." *Lawyer and Nonlawyer Representation of Labor Organizations in Collective Bargaining and Labor Grievance Arbitration*, Op. No. UPL 2008–01, 3 (February 7, 2008). The Ohio Board acknowledged that arbitration, while still an adversarial process, "does not rely on the strict use of formal rules of civil procedure or rules of evidence." *Id.* Likewise, a 1975 report of the Committee on Labor and Social Security Legislation of the Association of the Bar of the City of New York concluded "that representation of a party in an arbitration proceeding by a nonlawyer * * * is not the unauthorized practice of law." Committee Report, *Labor Arbitration and the Unauthorized Practice of Law*, 30 Record of the Association of the Bar of the City of New York, 422, 428 (1975).

Other jurisdictions have expressly permitted nonlawyer representation in arbitrations under specific statutes or court rules governing the practice of law. For example, the court rules of Connecticut, Utah, and Washington explicitly permit nonlawyers to participate in labor arbitrations without determining whether or not the act constitutes the practice of law.[13]

---

ed Steelworkers of America v. American Manufacturing Co._, 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1432 (1960).

**12.** The Supreme Court has affirmed arbitration as the heart of collective bargaining. *Litton Financial Printing Division, A Division of Litton Business Systems, Inc. v. N.L.R.B._, 501 U.S. 190, 204, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991) (emphasizing that "the arbitration duty is a creature of the collective-bargaining agreement" (quoting *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL–CIO_, 430 U.S. 243, 250, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977))); *United Paperworkers International Union, AFL–CIO v. Misco, Inc._, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) ("[I]t must be remem-

bered that grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining."); *AT & T Technologies, Inc. v. Communications Workers of America_, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability * * *.").

**13.** Section 2–44A.(b) of the Connecticut Rules for the Superior Court Practice Book reads in pertinent part: "Whether or not it constitutes the practice of law, the following activities by any person are permitted: * * * (4) Participating in labor negotiations, arbitrations, or conciliations arising under collective bargaining rights or agreements." Rule 14–802(c) of

California's Code of Civil Procedure dictates that while a party to an arbitration has the right to be represented by an attorney, "any party to an arbitration arising under collective bargaining agreements * * * may be represented in * * * those proceedings by any person, regardless of whether that person is licensed to practice law in this state." Cal.Civ.Proc.Code §§ 1282.4(a) and 1282.4(h). Although these relatively few states hardly indicate a conclusive trend, it is notable that neither we nor the parties herein were able to uncover any jurisdiction that has specifically declared that nonlawyer representation in labor arbitrations constitutes the unauthorized practice of law.[14] Having surveyed other jurisdictions, we now explore the history of the regulation of the practice of law and the role of labor arbitrations in Rhode Island.

## C

### The Practice of Law in Rhode Island

We begin by reemphasizing "that the definition of the practice of law and the determination concerning who may practice law is exclusively within the province of this court * * *." *Department of Workers' Compensation,* 543 A.2d at 664. We are aware of the Legislature's efforts in attempting to codify a concept that is inherently difficult to define. First enacted in 1917, and as now codified in § 11–27–5, this statute provides that "[n]o person, except a duly admitted member of the bar of this state, whose authority as a member to practice law is in full force and effect, shall practice law in this state."[15] However, despite the Legislature's attempts, we now reiterate what we articulated in *Rhode Island Bar Association,* 55 R.I. at

---

Utah's Supreme Court Rules of Professional Practice reads in pertinent part: "Whether or not it constitutes the practice of law, the following activity by a non-lawyer, who is not otherwise claiming to be a lawyer or to be able to practice law, is permitted: * * * (c)(10) Participating in labor negotiations, arbitrations or conciliations arising under collective bargaining rights or agreements or as otherwise allowed by law." Rule 24(b) of Washington's Rules of General Application reads in pertinent part: "Whether or not they constitute the practice of law, the following are permitted: * * * (5) Participation in labor negotiations, arbitrations or conciliations arising under collective bargaining rights or agreements."

**14.** It is noteworthy that Rule 20 of the American Arbitration Association's Labor Arbitration Rules and Expedited Labor Arbitration Procedures provide that "[a]ny party may be represented [at a hearing] by counsel or other authorized representative."

**15.** The practice of law is defined in § 11–27–2 as:

"* * * the doing of any act for another person usually done by attorneys at law in the course of their profession, and, without

limiting the generality of the definitions in this section, includes the following:
"(1) The appearance or acting as the attorney, solicitor, or representative of another person before any court, referee, master, auditor, division, department, commission, board, judicial person, or body authorized or constituted by law to determine any question of law or fact or to exercise any judicial power, or the preparation of pleadings or other legal papers incident to any action or other proceeding of any kind before or to be brought before the court or other body;
"(2) The giving or tendering to another person for a consideration, direct or indirect, of any advice or counsel pertaining to a law question or a court action or judicial proceeding brought or to be brought;
"(3) The undertaking or acting as a representative or on behalf of another person to commence, settle, compromise, adjust, or dispose of any civil or criminal case or cause of action;
"(4) The preparation or drafting for another person of a will, codicil, corporation organization, amendment, or qualification papers, or any instrument which requires legal knowledge and capacity and is usually prepared by attorneys at law."

127, 179 A. at 141, that the authority "to regulate and control the practice of the law remains where it has always been, notwithstanding the exercise by the [G]eneral [A]ssembly of its undoubted power to declare acts of unauthorized practice of the law illegal * * *." This Court further observed that the legislation involved in that case pertaining to the practice of law "was in aid of the authority of this [C]ourt in the regulation and control of the practice of the law, and not subversive of it." *Id.* As such, Rhode Island's Practice of Law Statute, chapter 27 of title 11, may serve to aid this Court in its duty to regulate such activity, but may not in and of itself "grant the right to anyone to practice law save in accordance with standards enunciated by this [C]ourt." *Department of Workers' Compensation,* 543 A.2d at 664 (citing *Berberian v. New England Telephone and Telegraph Co.,* 114 R.I. 197, 330 A.2d 813 (1975); *In re Rhode Island Bar Association,* 106 R.I. 752, 263 A.2d 692 (1970); *Rhode Island Bar Association v. Automobile Service Association,* 55 R.I. 122, 179 A. 139 (1935)).

## D

### Labor Arbitrations in Rhode Island

█ In Rhode Island, the judiciary has a limited role in the arbitration process. *Prudential Property and Casualty Insurance Co. v. Flynn,* 687 A.2d 440, 441 (R.I.1996) (citing *Paola v. Commercial Union Assurance Companies,* 461 A.2d 935, 936 (R.I.1983)); *see also North Providence School Committee,* 945 A.2d at 347 ("We review arbitral awards under an exceptionally deferential standard as a means of ensuring that parties may benefit from arbitration * * *."). Indeed, a major incentive for parties "voluntarily contract[ing] to use arbitration as an expeditious and informal means of private dispute resolution" is to "avoid[ ] litiga-

tion in the courts." *Flynn,* 687 A.2d at 441 (quoting *Aetna Casualty & Surety Co. v. Grabbert,* 590 A.2d 88, 92 (R.I. 1991)). The judiciary's limited review is also statutorily prescribed. *See* Rhode Island's Actions by Labor Organizations Statute, G.L.1956 chapter 8 of title 28; Rhode Island's Arbitration Statute, G.L. 1956 chapter 3 of title 10; *see also Jacinto v. Egan,* 120 R.I. 907, 911, 391 A.2d 1173, 1175 (1978).

Each year, labor and management organizations throughout Rhode Island enter into collective-bargaining agreements, many of which provide for the arbitration of unresolved grievances. This Court recognizes, as did the committee in the case at bar, that the common practice in Rhode Island allows for nonlawyers to represent unions in arbitration proceedings, although such practice is neither statutorily permitted nor proscribed in this state. Indeed, the record currently before this Court reflects that the town and union's prior arbitration proceedings were conducted with the union represented by a nonlawyer.

## E

### Factors for Consideration

█ Although the use of nonlawyer representation in labor arbitrations is commonplace in Rhode Island, this factor alone does not provide the necessary basis for this Court to authorize this practice. Keeping the public welfare at the forefront of our considerations, we must also weigh the public policy interests involved with lay representation in labor arbitrations.

In assessing the benefits of allowing nonlawyer representation in labor disputes, we note that "arbitration usually is not equivalent to judicial factfinding. The record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply." *Alexander v. Gardner–Denver*

*Co.*, 415 U.S. 36, 57, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Indeed, "[a] basic incentive for the use of arbitration is to provide the parties with a mode of dispute resolution that is expeditious, inexpensive, and informal." *North Smithfield Teachers Association v. North Smithfield School Committee*, 461 A.2d 930, 933 (R.I.1983).

Further, in contrast to other types of disputes, labor disputes are unique in that the "law of the shop" rather than strict adherence to legal principles typically controls. Union representatives are often particularly qualified to represent a union based on their familiarity with the multi-level grievance process, their knowledge of the operating procedures, equipment, and training, and their understanding of the formation and evolution of the applicable collective-bargaining agreement. This is not to say that licensed attorneys do not have, or are not able to acquire, such knowledge of, or familiarity with, these matters, but simply to acknowledge why union employees often represent unions in arbitrations.[16]

Moreover, prohibiting this practice and requiring both the labor union and management to retain a lawyer may formalize an arbitration proceeding, delay its conclusion, and raise the cost for both parties.[17] Committee Report, 30 Record of the Association of the Bar of the City of New York, at 427–28 (suggesting that requiring lawyer representation will "greatly diminish the informality, flexibility, speed, efficiency and economy which are the hallmarks of the grievance resolution process").

It is also deserving of mention that this Court and the General Assembly have permitted nonlawyer representation to occur in other settings. In *Department of Workers' Compensation*, 543 A.2d at 666, a majority of the Court held that two statutes enacted by the General Assembly, authorizing employee assistants to aid injured employees in informal hearings before the Department of Workers' Compensation, did not violate this Court's exclusive authority to regulate the practice of law. Acknowledging that the actions of the nonlawyer employee assistants would generally fall within the definition of the practice of law, this Court nonetheless authorized this conduct after recognizing the public need and deferring to the Legislature's assessment of the statutes' necessity. *Id.*[18]

**16.** In a similar manner, the United States Supreme Court recognized this understanding when it compared labor arbitrators and judges:

"The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his [or her] judgment of a particular grievance will reflect not only what the contract says but ▪ * * such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, [and] his [or her] judgment whether tensions will be heightened or diminished. * * * The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because

he [or she] cannot be similarly informed." *Warrior & Gulf Navigation Co.*, 363 U.S. at 582, 80 S.Ct. 1347.

**17.** "Growing lawyer involvement in labor arbitration hearings, itself a manifestation of formalism, means the scheduling of arbitration hearings often hinges on lawyers' availability and the time required by lawyers to learn what party representatives involved in handling the grievance already know." Reginald Alleyne, *Delawyerizing Labor Arbitration*, 50 Ohio St. L.J. 93, 96 (1989).

**18.** This Court in *Unauthorized Practice of Law Committee v. State, Department of Workers' Compensation*, 543 A.2d 662, 664–65 (R.I. 1988), noted that:

"[T]he General Assembly has without interference by this court permitted a great many services that would have come within

Additionally, in accordance with G.L. 1956 § 28–7–9(a), the Rhode Island State Labor Relations Board's General Rules and Regulations allow nonlawyers to represent unions and employers in unfair labor practice proceedings. *See* 16–020–001 R.I.Code R. § 5.01.2(b) ("Business managers, field agents, union stewards, or any other member(s) of a labor organization, may represent a union or an individual complainant in any proceeding before the Board.").

Juxtaposed to these policy arguments are the various factors indicating that Mr. Andriole's actions in the arbitration hearing did, in fact, constitute the unauthorized practice of law. First, we look to the committee's thorough investigation and report on the matter. The committee report noted that § 11–27–2 defines, without limitation, an activity that constitutes the practice of law as "the doing of any act for another person usually done by attorneys at law in the course of their profession, and, *without limiting the generality of the definitions in this section*, includes the following * * *." (Emphasis added.) Section 11–27–2 then sets forth an exhaustive list of settings and actions where a person doing an act for another qualifies as the practice of law.[19] Although an arbi-

tration hearing is not specifically identified in § 11–27–2(1) as a forum before which nonlawyers are prohibited from appearing on behalf of another party, the non-limiting language emphasized above appears to preclude nonlawyers from engaging in attorney-like activities in any context, even an alternative dispute resolution hearing.

The committee, relying on § 11–27–2, also found that "Mr. Andriole engaged in a number of activities that are 'usually done by attorneys at law in the course of their profession.'" Specifically, Mr. Andriole presented arguments, examined and cross-examined witnesses, submitted evidence to the arbitrator, and objected to evidence and arguments presented by the town. In so doing, Mr. Andriole represented the union in a proceeding that would determine the specific rights and duties of the parties to a legally binding contract. In the process, Mr. Andriole acted in ways normally attributed to the practice of law.

We also note that although § 11–27–11 specifically allows nonlawyers to participate in particular practices that would otherwise fall within the definition of the practice of law, nonlawyer representation in labor arbitrations is not among them.[20]

the definition of the practice of law to be performed by insurance adjusters, town clerks, bank employees, certified public accountants, interstate commerce practitioners, public accountants * * *, as well as employee assistants. The plain fact of the matter is that each of these exceptions enacted by the Legislature constituted a response to a public need. In each instance the Legislature determined that the persons authorized to carry out the permitted activities were qualified to do so."

19. *See* § 11–27–2 in note 15, *supra*.

20. These permitted practices include:

"(1) Clerks of court and recorders of deeds * * * drafting * * * any legal instruments that may be necessary for the proper

conduct and discharge of their respective offices and duties.

"(2) Clerks or registered students in law offices * * * acting under the direction of a member of the bar of this state whose authority as a member to practice law is in full force and effect.

"(3) Any person * * * occasionally collecting or adjusting any unassigned claim of or against any member of his or her household or of or against his or her regular and principal employer.

"(4) The performance of any service personally performed by any natural person acting as administrator, executor, guardian, trustee, or other fiduciary in the preparation * * * of inventories, accounts, tax returns, or other services * * *.

" * * *

As is evident from the credible arguments on both sides of the issue, we find this an exquisitely close case. Considering the foregoing factors, as well as the unique facts of the case at bar,[21] the participating members of this Court are reluctant to disturb the status quo at this time. Any decision to limit the practice of nonlawyer representation in public labor arbitrations will undoubtedly have an impact on all public labor arbitrations throughout this state. Having set the framework for future consideration, as a judicial triumvirate we much prefer to review this issue with the benefit of a full Court. *Goodheart v. Casey*, 523 Pa. 188, 565 A.2d 757, 763–64 (1989) (recognizing the benefit of having "the reflective judgment enriched by the varied perspectives" of a full court's participation).

## IV

### Conclusion

Accordingly, although the conduct involved in this case may be the practice of law pursuant to the language of § 11–27–2, because of the long-standing involvement of nonlawyer union employees at public grievance arbitrations, we will not limit this involvement at this time. We may in the future, however, and under the supervisory powers of the Court and with the full Court participating, decide the generic

issue of nonlawyers participating in public grievance arbitrations.

Chief Justice SUTTELL and Justice ROBINSON did not participate.

"(6) Any person * * * drawing, in the regular course of his or her regular business or employment, any note, bill, draft, bill of sale * * *.
"(7) Any certified public accountant or member of the American Institute of Accountants * * * appearing or acting as a representative of another person before any federal, state, or municipal department * * *.
"(8) Any person registered to practice before the Interstate Commerce Commission * * * appearing or acting as representative of another person before any federal, state, or municipal department * * *.
"(9) Any public accountant from advising a taxpayer in * * * preparing for or on behalf of a taxpayer any federal, state, or municipal tax return * * *." Section 11–27–11.
*See also* § 11–27–16 (listing practices permitted to corporations and associations).

21. We note that the Superior Court, having confirmed the arbitration award in favor of the town, found the underlying matter moot.